

# NUMBER 13-23-00008-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE DEANDRE TIREON ENOCH

## ON APPEAL FROM THE 25TH DISTRICT COURT
## OF LAVACA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Longoria**

Appellant Deandre Tireon Enoch appeals the trial court's denial of his application for pretrial writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.08. In one issue, Enoch argues that the trial court erred in denying habeas relief because double jeopardy and collateral estoppel bar any attempt by the State to retry him for murder following the trial court's grant of mistrial. We affirm.

## I. BACKGROUND

Enoch was charged with murder. *See* TEX. PENAL CODE ANN. § 19.02. Trial commenced for Enoch's case on November 1, 2022. After the jury was sworn, Enoch pleaded not guilty. After the State concluded its opening statements, Enoch's counsel approached the bench and informed the trial court that one of the prosecutors (Prosecutor A) was not eligible to practice law in Texas and lodged a motion for mistrial. Outside the presence of the jury, Enoch's counsel explained that Prosecutor A was included in a list of lawyers ineligible to practice law in Texas on the State Bar of Texas website. Prosecutor A then requested she be permitted to contact the State Bar, which was granted by the trial court. The following exchange occurred:

| | |
|---|---|
| [Enoch's Counsel]: | I think [Prosecutor A] probably needs to ask the State Bar how long she's been ineligible because she's signed almost every pleading in this case and presided over the grand jury proceedings. |
| [Prosecutor A]: | Your Honor, I have the State Bar on the phone. They said that I can make payment and that I'll be—that I was suspended in [sic] September, 1st, but that I can make payment immediately and that they would reinstate me . . .  immediately and that that would be backdated until September 1st, the suspension. They also said that since this is my first time I can have it expunged, but the expunction might take a couple of days. Is that correct, ma'am? Did I explain that correctly? |
| [State Bar Representative]: | Yes. |
| [Prosecutor A]: | So as soon as I make payment it will be backdated to me being instated. I'm making payment right now, Your Honor. |

2

| The Court: | Court's in recess. |

After a recess, the trial court heard arguments regarding Enoch's motion for mistrial outside the presence of the jury:

| [Enoch's Counsel]: | Judge, at all times that—I guess, if it is, in fact, from September, which she was ineligible to practice law, she filed motions on behalf of the State. She entered an appearance here while she was ineligible. We would ask for a mistrial based on those grounds. |
| [The Court]: | [Prosecutor A]. |
| [Prosecutor A]: | Your Honor, the State Bar of Texas has sent me a letter saying that they have reinstated me. I was informed by the membership accounting manager . . . that as soon as I paid my dues I would be reinstated and that it would be backdated to the suspension date in September. She will be providing me—hopefully providing me a letter later today from her director saying that it will be backdated. The letter—I can present to you the letter. It was not done intentionally, Your Honor. I did not realize that I was suspended. |
| [Enoch's Counsel]: | The facts are in front of you, Judge. I mean, at the time that she began this case, at the time she was entering pleadings, at the time she was continuing to give us discovery, at least from that it appears that she was ineligible to practice law, so it's certainly up to you, Judge, but those are the facts. |

The trial court granted Enoch's motion for mistrial without prejudice and subsequently excused the jury. The trial court reset the trial to commence on January 6, 2023.

3

On November 28, 2022, Enoch filed an application for a writ of habeas corpus, arguing that the State was barred under "the protections against 'Double Jeopardy,' and collateral estoppel" from retrying Enoch because the trial court granted his motion for mistrial after jeopardy had attached. Specifically, Enoch stated:

> All of the circumstances prompting the mistrial were attributable to the State of Texas not adhering to the rules in which the practice of law in the State of Texas has simply set forth to assure the system can be accountable for those who have sworn to uphold the law before it. In this case, like in others, there is no judicial admonishment to the jury which can cure an ineligible lawyer litigating a murder trial on behalf of the State of Texas, and the ensuing motion for mistrial by the [sic] DEANDRE TIREON ENOCH cannot fairly be described as the result of his free election but leaving him with a 'Hobson's choice' between giving up his first jury and continuing a trial tainted by prosecutorial error. *See United States v. Dinitz*, 424 U.S. 600, 609 (1976). It is clear that the tenets of Double Jeopardy bar any further prosecution under the indictment in this case.

On January 6, 2023, the State filed its response to Enoch's writ application, arguing among other things that it had no intent to "goad" Enoch into moving for a mistrial. On the same day, the trial court held a hearing on Enoch's writ application and heard arguments from the parties. No additional evidence was admitted at the hearing. At the conclusion of the hearing, the trial court pronounced its ruling:

> In this case no witnesses were called. The only thing that happened was that there was an opening statement. If nothing, it paints a picture for the defense on where the State intends to go. They have that knowledge going forward, but there's no prejudice to Mr. Enoch under this scenario, so the writ is denied.

The trial court subsequently signed and entered its written order denying Enoch's habeas writ application on January 10, 2023.[1] This appeal ensued. *See Greenwell v. Ct. of*

---

[1] The trial court did not issue any findings of facts or conclusions of law in its order denying Enoch's habeas writ application, and the parties did not request any.

*Appeals for the Thirteenth Jud. Dist.*, 159 S.W.3d 645, 650 (Tex. Crim. App. 2005) (orig. proceeding) ("An order denying relief on the merits is a final judgment in the habeas corpus proceeding.").

## II.    DOUBLE JEOPARDY

In his sole issue, Enoch argues that the trial court erred in denying his pretrial habeas writ application because double jeopardy barred the State from retrying his case.[2]

### A.    Standard of Review and Applicable Law

"A defendant may use a pretrial writ of habeas corpus only in very limited circumstances." *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005). A pretrial writ application is improper when resolution of the question presented, even if resolved in defendant's favor, would not result in immediate release. *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001). A defendant may use a pretrial habeas application to assert his constitutional protections with respect to double jeopardy. *Ex parte Ingram*, 533 S.W.3d 887, at 892 (Tex. Crim. App. 2017); *Ex parte Weise*, 55 S.W.3d at 619.

We generally review a trial court's ruling on an application for writ of habeas corpus using an abuse-of-discretion standard, and we view any evidence in the light most favorable to that ruling and defer to implied factual findings supported by the record. *Ex parte Fusselman*, 621 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd).

---

[2] Enoch also argues that collateral estoppel barred the State from retrying his case. However, Enoch has presented no argument, case citations, or record citations related to this sub-issue. Therefore, Enoch has waived this sub-issue through inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("An appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." (cleaned up)); *Briceno v. State*, 675 S.W.3d 87, 96 (Tex. App.—Waco 2023, no pet.) (finding waiver where appellant "inadequately briefed" an issue).

A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Ex parte Allen*, 619 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). We must uphold the trial court's judgment if it is correct on any theory of law applicable to the case. *Ex parte K.W.*, 650 S.W.3d 862, 868 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.).

In a habeas corpus proceeding, the applicant bears the burden of alleging and proving specific facts which, if true, would entitle him to relief. *See Druery v. State*, 412 S.W.3d 523, 538 (Tex. Crim. App. 2013). Our review of the habeas court's ruling may include the evidence adduced at the habeas hearing and the record as it existed before the habeas court at the time of the hearing. *Ex parte Martinez*, 560 S.W.3d 681, 695 (Tex. App.—San Antonio, 2018 pet ref'd) (citing *Ex parte Coleman*, 350 S.W.3d 155, 160 (Tex. App.—San Antonio, 2011 no pet.)).

Generally, a criminal defendant may not be put in jeopardy by the State twice for the same offense. U.S. CONST. amend. V; *Pierson v. State*, 426 S.W.3d 763, 769 (Tex. Crim. App. 2014). In cases tried by a jury, a defendant is placed in jeopardy when the jury is empaneled and sworn. *Pierson*, 426 S.W.3d at 769 (quoting *Arizona v. Washington*, 434 U.S. 497, 504 (1978)). When a defendant requests a mistrial, as occurred in this case, the defendant has elected to terminate the proceedings against him and the double-jeopardy clause generally does not bar retrial. *Oregon v. Kennedy*, 456 U.S. 667, 672–73 (1982); *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) (adopting the standard articulated in *Kennedy* for determining when to grant double jeopardy relief after a defense-requested mistrial). However, when the prosecutor's actions giving rise to the

motion for mistrial were done "to goad the [defendant] into requesting a mistrial," the Double Jeopardy Clause will bar retrial. *Kennedy*, 456 U.S. at 672–73 (quoting *United States v. Dinitz*, 424 U.S. 600, 611 (1976)); *see Ex parte Masonheimer*, 220 S.W.3d 494, 507–508 (Tex. Crim. App. 2007) (noting that *Kennedy* cited with approval several cases in which retrial had been barred when the prosecution deliberately engaged in conduct with the specific intent to avoid an acquittal).

Thus, in Texas, when a defendant moves for a mistrial and subsequently claims retrial is barred by double jeopardy, the habeas court, and all subsequent reviewing courts, must determine whether: (1) the prosecutor engaged in conduct to goad or provoke the defense into requesting a mistrial; or (2) the prosecutor deliberately engaged in the conduct at issue with the intent to avoid an acquittal. *Martinez*, 560 S.W.3d at 697 (first citing *Masonheimer*, 220 S.W.3d at 507–08; then citing *Lewis*, 219 S.W.3d at 336; and then citing *Coleman*, 350 S.W.3d at 160).

The Texas Court of Criminal Appeals, in *Ex parte Wheeler*, 203 S.W.3d 317 (Tex. Crim. App. 2006), set out the following non-exclusive factors to assist the trial court when assessing whether a prosecutor's misconduct goaded or provoked the defendant into requesting a mistrial:

(1) Was the misconduct a reaction to abort a trial that was "going badly for the State?" In other words, at the time the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

(2) Was the misconduct repeated despite the trial court's admonitions?

(3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?

(4) Was the conduct "clearly erroneous"?

(5) Was there a legally or factually plausible basis for the conduct despite its impropriety?

(6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they intentional . . . misconduct?

*Id.* at 323–24 (modified to delete "reckless misconduct" from the sixth factor per *Lewis*, 219 S.W.3d at 337–371); *see also Martinez*, 560 S.W.3d at 697 n.8 (citing cases modifying the sixth *Wheeler* factor in light of *Lewis*).

## B.      Discussion

In determining whether the trial court abused its discretion in denying Enoch's habeas writ application, we consider the evidence in the light most favorable to the trial court's denial using the *Wheeler* factors. *See Fusselman*, 621 S.W.3d at 116; *Martinez*, 560 S.W.3d at 697.

Before addressing the *Wheeler* factors, we note that "[w]ithin ten days of being admitted to practice law in Texas, a [State Bar] member must file with the clerk the enrollment form prescribed by the State Bar and pay all required fees." TEX. STATE BAR R. art. III, § 2, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A. "All membership fees are payable at the time of enrollment as a member of the State Bar and annually on the first day of the State Bar's fiscal year." *Id.* § 4. The State Bar Rules also provide for the automatic suspension from the practice of law of any member who is in default of payment of membership fees. *See id.* § 6. Article III, § 6, specifically provides:

> If a member is in default of payment of membership fees or any assessment levied by the Court on the 30th day after the due date, the clerk will promptly notify the member of the default. If the fees and assessments are not paid within 60 days after the notice of default is mailed, the defaulting member

8

will automatically be suspended from the practice of law. Practicing law while suspended is professional misconduct and grounds for discipline.

*Id.* This point is reiterated under Texas Disciplinary Rule of Professional Conduct 8.04(11), which states that a lawyer shall not

> engage in the practice of law when the lawyer is on inactive status, except as permitted by section 81.053 of the Government Code and Article XIII of the State Bar Rules, or when the lawyer's right to practice has been suspended or terminated including, but not limited to, situations where a lawyer's right to practice has been administratively suspended for failure to timely pay required fees or assessments or for failure to comply with Article XII of the State Bar Rules relating to Mandatory Continuing Legal Education . . . .

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(11), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app., app. A (TEX. STATE BAR R. art. X, § 9). The State Bar Rules also provides a method for a member suspended for nonpayment of fees to be restored to active status:

> When a member who has been suspended for nonpayment of fees or assessments removes the default by payment of fees or assessments then owing plus an additional amount equivalent to one-half the delinquency, the suspension will automatically be lifted and the member restored to former status. Return to former status is retroactive to the inception of the suspension, but does not affect any proceeding for discipline of the member for professional misconduct.

TEX. STATE BAR R. art. III, § 10(a). Here, the parties do not dispute that Prosecutor A's engagement in the practice of law while suspended by the State Bar for nonpayment of fees constituted misconduct.

Regarding the first *Wheeler* factor, there is no evidence that Prosecutor A's misconduct was a reaction to abort a trial that was "going badly for the State." At the time Enoch sought a mistrial—after the State's opening statements—no evidence had yet

been presented to the jury. Under these circumstances, we cannot say that Enoch would have likely obtained an acquittal but for Prosecutor A's misconduct. *See Wheeler*, 203 S.W.3d at 324; *see also State v. Rushing*, No. 09-16-00423-CR, 2017 WL 4182316, at *8 (Tex. App.—Beaumont Sept. 20, 2017, pet. ref'd) ("The fact that the mistrial occurred at a very early stage in the proceedings further supports our view that double jeopardy does not bar Rushing from being retried.").

Regarding the second *Wheeler* factor, there is no evidence demonstrating that Prosecutor A continued to commit misconduct despite admonitions from the trial court. Instead, the evidence demonstrates that mistrial was granted shortly after Enoch lodged his request for mistrial, and the trial court made no admonitions to Prosecutor A. In addition, before mistrial was granted, Prosecutor A informed the trial court that she had paid her outstanding State Bar fees and received a letter from the State Bar indicating that her eligibility to practice law was reinstated retroactive to the date of suspension.[3] *See* TEX. STATE BAR R. art. III, § 10(a).

Regarding the third, fourth, and fifth *Wheeler* factors, Prosecutor A explained that her nonpayment of State Bar fees was not intentional and that she had not realized she was suspended. Prosecutor A's actions in engaging in the practice of law while suspended for nonpayment of fees was clearly erroneous. *See* TEX. STATE BAR R. art. III, § 6 ("Practicing law while suspended is professional misconduct and grounds for discipline."); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a)(11). However,

---

[3] We note that, in its response to Enoch's habeas writ application, the State attached a letter from the State Bar, dated November 1, 2022, indicating that Prosecutor A was "currently on active status and eligible to practice law in Texas."

the trial court could have found Prosecutor A's explanation that she was unaware of her suspension to be a reasonable and good faith explanation for her misconduct and a factually plausible basis for her actions despite their impropriety. More importantly, regarding these factors, we have found no evidence establishing that Prosecutor A deliberately engaged in misconduct with the specific intent to avoid an acquittal or to goad Enoch into requesting a mistrial. *See Masonheimer*, 220 S.W.3d at 507–508; *Lewis*, 219 S.W.3d at 336; *Martinez*, 560 S.W.3d at 697.

Regarding the sixth *Wheeler* factor, Prosecutor A explained to the trial court that she was unaware of her suspension by the State Bar.[4] The record also shows that upon learning of her suspension, Prosecutor A paid her outstanding fees, was reinstated by the State Bar, and became eligible to practice law that same day. Given the evidence of the actions taken by Prosecutor A and her testimony relating thereto, the trial court could have found that Prosecutor A's misconduct was the result of negligence, and inconsistent with intentional misconduct. Such negligence does not bar retrial. *See Masonheimer*, 220 S.W.3d at 507–508; *Lewis*, 219 S.W.3d at 336; *Martinez*, 560 S.W.3d at 697.

Based on an examination of the evidence under the appropriate standard of review, and considering the *Wheeler* factors, we hold the trial court did not abuse its discretion in denying Enoch habeas relief. *See Masonheimer*, 220 S.W.3d at 507–08;

---

[4] Enoch argues that Prosecutor A's statement during the mistrial hearing that the only thing she could think of regarding her suspension was that she forgot to pay her bar dues "strongly suggests" that she was "already aware of her [suspended] status with the State Bar." As the trier of fact, the trial court was free to reject that view of the prosecutor's testimony. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of evidence."). In addition, we are required to view the evidence in the light most favorable to the trial court's ruling, and we defer to implied factual findings supported by the record. *See Fusselman*, 621 S.W.3d at 116.

11

*Lewis*, 219 S.W.3d at 336; *Martinez*, 560 S.W.3d at 697. Accordingly, we overrule Enoch's sole issue.

### III.     CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
18th day of April, 2024.